## WM. G. SMITH. v. S. M. SEATON.

ERROR TO THE COURT OF COMMON PLEAS OF BUTLER COUNTY.

Argued October 19, 1887—Decided November 11, 1887.

1. Where the title of a devisee in the land devised was sold on an execu-
tion for his individual debt, a subsequent sale of the land made under
process from the Orphans' Court to enforce payment of a debt of the
testator adjudicated within five years from his death, will divest the
title of the purchaser of the devisee's title at the previous sheriff's sale.
2. Such will be the result, though the devisee received as the executor of
his testator personal assets sufficient to discharge the testator's debts,
and notwithstanding he was not warned by scire facias of the proceed-
ings resulting in the sale of the land by the Orphans' Court process.
3. Horner v. Hasbrouck, 41 Pa. 169, explained and followed.

Before GORDON, C. J., PAXSON, STERRETT, GREEN and
WILLIAMS, JJ.; TRUNKEY and CLARK, JJ., absent.
No. 200 October Term 1887, Sup. Ct.; court below, No. 88
March Term 1885, C. P.

This was an ejectment brought on February 25, 1885, by S.
M. Seaton, administrator d. b. n. c. t. a. of Gideon Grubb, de-
ceased, against Wm. G. Smith, to recover a tract of fifty-six
acres of land in Clay township.

Gideon Grubb died on July 24, 1874, testate, leaving a
widow, Mary Grubb, and three children.   His will, which was
duly admitted to probate and letters thereon issued to said
Mary Grubb, executrix therein, on October 19, 1874, contained
this clause :  " I give to my wife, Mary, all my bedding, house-
hold and kitchen furniture, and the management of all my
property, both real and personal, for her use to my youngest
boy comes of age."   On November 18, 1874, the executrix filed
an inventory, consisting of hay, grain, horses, cattle, sheep,
farming implements, etc.; the appraised value aggregating
$1,564.05.   No sale was made of the property appraised.   It
was used up, worn out, and as occasion required replaced by
other property of like character.

At the death of her said husband, Mrs. Grubb was the owner

in fee in her own right of the Clay township tract in dispute in this case. On June 15, 1875, she was married to J. A. Erickson, who lived on her farm, with her and her family, until her death which occurred April 19, 1881. By her will, admitted to probate on April 22, 1881, she devised the Clay township farm in fee to her second husband and appointed him her executor. Mr. Erickson, as her executor, on May 16, 1881, filed an inventory and appraisement of her personal estate, being the property on the farm of her first husband, Gideon Grubb, deceased, at her death, amounting to $1,024.38.

After the death of Mrs. Erickson, at the instance of the guardian of Gideon Grubb's children, letters of administration d. b. n. c. t. a. upon the estate of Gideon Grubb, deceased, were issued to S. M. Seaton, who proceeded to enforce a settlement by Mr. Erickson as executor of Mrs. Erickson, of her account as executor of Gideon Grubb. Such an account was filed on March 6, 1882, showing a balance due from the estate of Gideon Grubb to the estate of Mrs. Erickson of $187.39, to which account exceptions were filed. While the determination of these exceptions was pending, judgments having been entered against J. A. Erickson, an execution was issued upon one of them, and on March 6, 1883, the Clay township tract, devised to him by the will of his wife, was sold at sheriff's sale to Wm. G. Smith, who became the purchaser after public notice to bidders of the pending proceedings and the claim of the estate of Gideon Grubb against the estate of Mrs. Erickson. The exceptions to said account were finally determined on July 30, 1884, resulting in a final decree that the estate of Mrs. Erickson was indebted to the estate of Gideon Grubb in the sum of $402.26.

Soon after the decree ascertaining this balance was made, process was issued thereon by the Orphans' Court and on December 8, 1884, the Clay township tract was sold at sheriff's sale on such process to said S. M. Seaton, administrator d. b. n. c. t. a., who then brought this action against Wm. G. Smith, in possession of the land under his former purchase at sheriff's sale as the property of Mr. Erickson.

At the trial on January 4, 1887, the foregoing facts appearing, the court, A. L. HAZEN, P. J., after reviewing the evidence and explaining the positions of the parties, charged:

Defendant claims that the title to this land in dispute came

to J. A. Erickson, and that he was the owner and use plaintiff, in one or more judgments, upon which execution was issued, the land levied upon and sold, and that he became the sheriff's vendee of the title of J. A. Erickson, and that that title was a full and complete title, and that he has the land free from any liens of debts owing by said Mary.

This brings the question down to the point in this issue: Was that amount decreed in the Orphans' Court as owing by Mary as executrix of her deceased husband, Gideon Grubb, a debt subsisting at the time of her death? If it was, then it was a lien upon all her estate, real and personal.

[Defendant claims further, that there having been sufficient personal property to have paid this debt, that the debt should have been paid out of that, and not having been so paid the land cannot be followed; and argued this with a great deal of earnestness, and seemingly backed it up with what is good authority in Pennsylvania, and if we were to be influenced by our admiration of an earnest plea, we would say to you, gentlemen, and it would afford us a great deal of pleasure to aid an effort of that kind, that that was the law, but we do not believe it is the law of Pennsylvania, and we say to you that it is not. We say to you that the law of Pennsylvania fixes very certainly the property of the decedent, real and personal, for the payment of his debts, and it is couched in better language here than probably I will be able to couch it without getting it to paper, and I will just read this: " In Pennsylvania, the lands of the decedent, like his goods, are assets for payment of debts, and the right of succession has respect only to so much of the estate as remains after payment of debts." Then, gentlemen, unless something has been done, or omitted, which would release this land, it is bound for the debt of the decedent. Has there been anything done or omitted that would release it from the lien of this debt? You have the evidence before you to determine that fact] [1] . . . . .

Probably all that we need to add in this matter will be covered in answering the points.

(Plaintiff withdraws his points.)

Then we refer to the points of the defendant, which the court is respectfully asked to answer:

1. The laws of this commonwealth under which the debts of

decedents become a lien upon their lands at their death, relate only to debts existing at the time of death; and, therefore, if the jury find from the evidence, that at the time of the death of Mary Erickson she was not indebted to the estate of Gideon Grubb, then no lien could, or did, attach to her lands in favor of said estate; and, as the title of the plaintiff depends upon that, the verdict should be for the defendant.

Affirmed.

2. If the jury find from the evidence that the personal assets of the estate of Mary Erickson, deceased, which came into the hands of J. A. Erickson, her executor, were sufficient to pay her debts, then her land was discharged from the lien of such debts, if any lien ever attached, although such assets may have been wasted by said executor, and the verdict should be for the defendant.

Refused.[2]

3. If the jury find from the evidence that J. A. Erickson was the devisee of Mary Erickson as to the land in dispute, and that the defendant, Wm. G. Smith, became the owner of the title of said Erickson, at a fair, open judicial sale, and was in possession of the land prior to the commencement of the proceedings on the part of the estate of Gideon Grubb, which resulted in the sheriff's sale to the plaintiff, and that said Wm. G. Smith was not legally notified of, or made a party to said proceedings, then his title was not divested by said sheriff's sale to plaintiff, and the plaintiff cannot recover in this action.

Refused.[3]

The verdict of the jury was in favor of the plaintiff for the land described in the writ, and, judgment being entered, the defendant took this writ, assigning for error:

1. The part of the charge embraced in [ ] [1]

2, 3. The answers to the defendant's points.[2] [3]

*Mr. A. T. Black*, for the plaintiff in error:

1. The tendency of the charge was to lead the jury away from the question of fact submitted to them by the affirmance of the defendant's first point, viz.: whether the amount with which the accountant was surcharged was a debt existing at the death of Mrs. Erickson. The court assumed such to have been the fact, and called the minds of the jury to the question

whether anything was done or omitted to release the land from the lien of said debt. Mrs. Erickson's executor did not become her successor in her trust as the executrix of Gideon Grubb: § 19, act of March 15, 1832, P. L. 40. It was only because of the delay which permitted Erickson to waste the property that she was decreed to be indebted to her first husband's estate. It is error to assume a fact not in evidence: Musselman v. Railroad Co., 2 W. N. 105; or so to charge as to lead away from the true point of inquiry: Harrisburg Bank v. Forster, 8 W. 304; Parker v. Donaldson, 6 W. &. S. 132; Bisbing v. Bank, 93 Pa. 79.

2. The assets coming to the executor of Mrs. Erickson were valued at $1,024.38, sufficient to pay all her debts; the land was therefore discharged therefrom, though the assets were wasted by the administrator: Pry's App., 8 W. 253; Kelly's Est., 11 Phila. 100; Hanna's App., 31 Pa. 53.

3. The proceedings in the Orphans' Court resulting in the sale of the land to the plaintiff, were without notice to the defendant, who was not made a party thereto, which was an irregularity; and if it did not invalidate the title of the plaintiff under Soles v. Hickman, 29 Pa. 342, at least it entitled the defendant to show on the trial, as he did, why the sale should not have been allowed: Benner v. Phillips, 9 W. & S. 13.

4. At all events, the sheriff's sale of the land to the defendant, as the property of the devisee, discharged the lien of the debts of the testatrix: Hanna's App., 31 Pa. 53; Allegheny City's App., 41 Pa. 60; Strauss's App., 49 Pa. 353; Davidson's App., 95 Pa. 394; Woods v. White, 97 Pa. 222; Bryan's App., 101 Pa. 389.

*Mr. Newton Black*, for the defendant in error:

1. Under the acts of March 29, 1832, P. L. 193, and February 24, 1834, P. L. 77, and the supplements thereto, the Orphans' Court is invested with the exclusive administration of the estate of a decedent: Kittera's Est., 17 Pa. 422; Whiteside v. Whiteside, 20 Pa. 473; Horner v. Hasbrouck, 41 Pa. 180. The Orphans' Court had taken jurisdiction over both estates, and proceedings were going on from December, 1881, to June, 1884; the amount due from the estate of the executrix was finally fixed at $402.26, and there has been no appeal from the decree.

Opinion of the Court.

2. This indebtedness, thus established by an adjudication of the Orphan's Court, being a lien for five years after Mrs. Erickson's death, under § 24, act of February 24, 1834, P. L. 77, was not discharged by a sale of the devisee's interest in the real estate on a judgment against him. The lands of a decedent, like his goods, are assets for the payment of debts, and the right to succession has reference only to so much of the estate as remains after the payment of debts: Horner v. Hasbrouck, 41 Pa. 179. It is wholly immaterial that there was sufficient personalty to pay the debt, if the executor, who is sole devisee, wasted it: Stewart v. Montgomery, 23 Pa. 413.

3. Nor does it matter that the defendant was not a party to the proceedings in the Orphans' Court. He was affected by the public notice, given at the sheriff's sale, of the condition of the title, and stands on no better footing than the devisee himself: Stewart v. Montgomery, 23 Pa. 412; Horner v. Hasbrouck, 41 Pa. 180; Soles v. Hickman, 29 Pa. 345; Hersey v. Turbett, 27 Pa. 418.

4. It is by no means a universal rule that a judicial sale divests all liens: Parr v. Bouzer, 16 S. & R. 309; Mix v. Ackla, 7 W. 316; In re McKenzey, 3 Pa. 156; Swar's App., 1 Pa. 92.

OPINION, MR. JUSTICE GREEN:

When the proceedings upon the account of Mary Erickson, executrix of her deceased husband, Gideon Grubb, reached a conclusion, they resulted in a decree of the Orphans' Court, that she was indebted to the estate of Gideon Grubb in the sum of $402.26. That decree being unreversed and unappealed from, was a final decree, the legal effect of which was, that it was a decree for a debt due by her at and before the time of her death, which occurred in 1881.

It matters not that the account was filed by her own executor, her second husband, who was also the sole devisee of all her real estate, nor that the final decree was not made until in the year 1884. The delay in ascertaining the debt was due only to the successive stages of the contest which was rendered necessary by the opposition and resistance of Mary Erickson's executor in the settlement of the account. But when all was finished, the decree was against her estate and represented her

indebtedness. When, therefore, her husband and devisee, J. A. Erickson, succeeded to her real estate by virtue of the provisions of her will, he took title thereto, subject to its obligation to be applied to the payment of her debts. In discharge of that obligation it was subsequently sold upon appropriate execution process issued out of the Orphans' Court upon the decree above mentioned.

The purchaser at that sale claims title to the land in the present contention, and his adversary is one who purchased the same land at a sheriff's sale under a judgment and execution against the same J. A. Erickson for his individual debt. The latter sale was made about a year and a half before the sale upon the decree of the Orphans Court, and the question is, which sale passed the true title to the land. The defendant, Smith, claims that he holds the true title, because he bought at a sheriff's sale upon a judgment and execution against one who, at the time of the sale, was the sole owner of the land, and that by that sale the land was divested of all liens, as well those against Mary Erickson as those against her devisee. There are some decisions of this court which seem to support this contention; but, upon examination, they will all be found to have preceded the case of Horner & Roberts v. Hasbrouck, reported in 41 Pa. at p. 169. This case was decided in the year 1861, and it raised substantially the same question that is presented on this record. There the estate of an heir was sold upon judgment and execution against him, and here it is the estate of a devisee, but the source of the title was the same in both cases, a decedent whose land passed in the one case by inheritance, and in the other by devise. In both, the sale of the successor's interest was made before the sale of the decedent's estate. In the present case the sale was made upon execution process issued out of the Orphans' Court upon petition for leave to issue the same in order to obtain payment of a particular debt, to wit, the debt recovered against the estate of Mary Erickson, the deceased owner of the land. In the case cited the sale was made upon an order of the Orphans' Court granted upon a petition for an order for the payment of debts. In neither of the cases was the purchaser of the title at sheriff's sale warned by scire facias of the proceeding for the sale in the Orphans' Court. In the present

case, the executor of Mary Erickson was also her devisee, and of course had full notice of the proceeding and was a party to it, and W. G. Smith, the defendant, was expressly and fully notified of the proceedings in the Orphans' Court at the time of his purchase at the sheriff's sale.

In the case of Horner v. Hasbrouck, as in this, it was contended that the sheriff's sale divested all liens, including the debts of the ancestor, and the whole question as to the title taken by the purchaser at that sale was fairly presented and distinctly decided. The opinion of this court was delivered by Mr. Justice WOODWARD, who discussed the entire subject most elaborately and exhaustively. It was held that the sheriff's sale did not divest the lien of the intestate's debts; that the estate of the heir was an interest only in the surplus left after the payment of the debts of the decedent and that the purchaser at the sheriff's sale took no other or greater interest than that of the heir. In the course of the opinion Judge WOODWARD said : " If it be said, as for some purposes it is correct to say, that the estate vests in the heir directly the ancestor dies, it must be understood to be a contingent interest, defeasible in behalf of creditors. What really vests in the heir is a title to the residuum, or in the language of our act of 1834, the surplusage of the estate. This is what the law casts on the heir. It can be nothing else consistently with our system of administration and distribution." Again he says : " And that inheritance in Pennsylvania where the decedent dies intestate and in debt, is limited to the ' surplusage ' of the estate after the debts are paid, and does really vest, for any practicable and available purpose, in nothing more than that surplusage. If this were not so a sheriff's sale on a judgment against an only heir after descent cast would take away the estate wholly from the creditors of the ancestor and give it to the creditors of the heir. In other words the principle that lands of a decedent are assets for payment of debts would be eradicated from the foundations of our jurisprudence, in which it was implanted by the hand of Penn himself." In the course of the opinion all the adjudged cases were fully reviewed and considered, and a deliberate judgment was reached which has remained the undoubted law of this commonwealth to the present day. It disposes of the case now before us and requires its affirmance.

It was argued for the plaintiff in error that because there were personal assets of Mary Erickson which came to the hands of her executor, her lands were discharged of her debts though the assets were wasted. Such is not the law and none of the cases cited in its support sustain the proposition. The same is true of another argument that the sale of the land by the sheriff as the property of the devisee discharged the lien of the decedent's debts.

Judgment affirmed.